KEITH H. RUTMAN (CSB #144175)
501 West Broadway Ste 1650
San Diego, California 92101-3541
Telephone: (619) 237-9072
Facsimile: (760) 454-4372
email: krutman@krutmanlaw.com

Attorney for Plaintiff
PAMELA FOX KUHLKEN

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

PAMELA FOX KUHLKEN,

           Plaintiff,

v.

COUNTY OF SAN DIEGO,
SAN DIEGO SHERIFFS DEPUTY
D.  SMITH (Id. # 1924) and DOES 1-5,

           Defendants.

Case No. **'16CV2504 CAB DHB**

**COMPLAINT FOR DAMAGES;
DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff PAMELA FOX KUHLKEN, by and through her

attorney of record, and hereby alleges:

This lawsuit for money damages is brought pursuant to the provisions of 42

U.S.C. § 1983 due to violations by Defendants of Dr. FOX's constitutional rights under

the Fourth Amendment to the U.S. Constitution.  Supplemental claims are also brought

pursuant to California law.

### JURISDICTION

1     Federal jurisdiction is founded upon the existence of a federal question, the Civil

Rights Act, 42 U.S.C. § 1983 and lies under 28 U.S.C. § 1331.  The remaining causes

of action arise under the supplemental jurisdiction of this Court and lie under 28 U.S.C.

§ 167.

///

///

## VENUE

2      Venue in the Southern District of California is proper because the injuries to Dr. FOX occurred herein and further because the Defendants are believed to reside in said district.

## PARTIES

3      Plaintiff PAMELA FOX KUHLKEN (hereinafter "FOX") was at all material times mentioned herein was a resident of the City of La Mesa, in the State of California.

4      Defendant COUNTY OF SAN DIEGO ("the COUNTY") is and was at all times mentioned herein a political sub-division of the State of California and is the employer of Defendants SAN DIEGO SHERIFFS DEPUTY D. SMITH (Id. # 1924) and DOES 1-5, who performed all of the herein alleged acts for, and in the name of, the COUNTY.

5      At all material times mentioned herein, Defendant SAN DIEGO SHERIFFS DEPUTY D. SMITH (Id. # 1924) and DOES 1-5 (collectively referred to as the Defendant Officers) were duly constituted law enforcement officers employed by the COUNTY Sheriff's Department and are charged with administering and maintaining laws in the jurisdiction of the COUNTY OF SAN DIEGO and State of California. Thus, they were the agents, servants, and/or employees of the COUNTY OF SAN DIEGO and in doing the acts herein alleged, were acting within the course and scope of their agency and/or employment, and with the permission, consent and authority of the COUNTY OF SAN DIEGO. The acts of the Defendant Officers were also done under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of California. The Defendant Officers are sued individually and in their capacity as peace officers for the COUNTY OF SAN DIEGO.

6      Prior to the filing of this complaint and on or about August 8, 2016, Dr. FOX filed a written claim with the COUNTY OF SAN DIEGO for the injuries alleged herein as required by, inter alia, California Government Code §§ 905, 905.2 and 945.4.

On September 20, 2016, by written letter, her claims were rejected in writing.  The administrative claims process need not be followed as a prerequisite to bringing suit as to the claims brought under 42 U.S.C. § 1983.  Patsy v. Board of Regents, 457 U.S. 496 (1982); Heath v. Cleary, 708 F.2d 1376, 1378 (9th Cir. 1983).

**GENERAL ALLEGATIONS**

7     Dr. PAMELA FOX KUHLKEN is a writer and a professor of Religious Studies and English Literature at San Diego State University.

8     This complaint stems from an incident that took place on the morning of February 21, 2016 in the parking lot of Epic Volleyball Club in Poway, California.

9     At approximately 9:00 a.m., Plaintiff dropped her daughter off at Epic for a volleyball tournament.  Because the parking lot was full she sat in her car near Epic's entrance waiting for a parking space to become available.

10     After a few minutes she saw a space open up and began pulling into the spot.  After her car was partway into the spot a man walked up and stood in front of the car, which she immediately shifted into park.  When she asked him to move out of the way he sat down right in front of her car and then laid down on his back and slid his feet under her car.  Before she could react a woman arrived in a white Infinity SUV and double-parked behind another car.  She got out of her SUV, launched into screaming at her to get out of her way and next shouted, "What are you doing to my husband? Are you trying to kill my husband? You're going to run him over?"  She then began circling her car apparently taking pictures or video with her phone.  When she was done she announced, "I'm calling the police." FOX rolled up her windows, locked her car door and called 911.

11     While she was on the phone with the 911 dispatcher the woman walked to the front of her car and started kicking her bumper and yelling.  FOX rolled her window down and yelled at her to stop.   FOX told the 911 dispatcher what was happening, provided her with the SUV's license plate number, and asked what she should do next.  The dispatcher instructed her to back up, park somewhere else and walk back to Epic to

3

wait for a deputy.  FOX complied.

12     When FOX walked back to Epic she was relieved to see there was already a Sheriff's SUV on scene parked next to the Infinity.  It was Deputy D.  SMITH.  FOX approached him and said, "Oh good, you're here in response to my call."  Deputy SMITH got out of his SUV and said, "It's all one situation, right?"  About this time FOX noticed two additional police cars, an ambulance and a firetruck (both with their lights and sirens on) driving into Epic's parking lot.

13     FOX asked Deputy Smith if he was responding to her 911 call for help regarding the couple that was blatantly attempting to stage some sort of fraud.  Deputy Smith's response was simply to demand identification.  Stunned, she said, "Excuse me?  I called for help because they were attacking my car and you are defending them without hearing my side?"  Deputy SMITH answered with, "Do you want to be tazed?!   Hand me your ID."  FOX replied, "I'm sure you can't taze me for just standing here.  I called you for help."  Deputy SMITH then said, "Hand me your purse."  Still stunned and baffled FOX said she wasnt aware she was required to hand over her property to the law without any reason.  Deputy SMITH responded by repeating his threat to taze her. She again told him she had called the police for help.  Deputy SMITH immediately grabbed the purse hanging on her shoulder.

14     Instinctively FOX held tight to her purse as Deputy SMITH attempted to pry her fingers off and snatch her purse away.  All the while FOX was imploring with him that she was the aggrieved party and the person who needed assistance.

15     Nevertheless, Deputy SMITH pinned her hands behind her back and shackled her in handcuffs.  When he saw that her hand had slipped out of one of the handcuffs he threw her to the asphalt injuring her head, shoulder, hip and both knees.  At this point she was terrified and scrambled to her feet, whereby Deputy SMITH solicited the assistance of a large, muscular civilian who was standing nearby.  Deputy SMITH and this other man together tackled her, pinned her to the ground and again handcuffed her, this time very tightly.  She immediately told Deputy SMITH that the cuffs were

4

extremely tight and asked him to please loosen them.  Rather than loosening the cuffs Deputy SMITH hoisted her to her feet, locked her in the back of his SUV and walked away.  It was another hour or so before he returned.

16     All of this occurred in front of a crowd of onlookers, many of whom Dr.  FOX will see again and again at her daughter's volleyball tournaments.

17     Eventually, around 10:30 a.m., Deputy SMITH came back only to demand FOX's daughter's name.  All she could manage was to continue to beg him to loosen the handcuffs.  Deputy SMITH ignored her pleas, responding instead with, "So you're refusing to answer my questions.  Tell me your daughter's name."  She did not give him her name; and again beseeched him to loosen the handcuffs, explaining that she was a writer and was concerned about getting nerve damage from the cuffs.  Deputy SMITH continued to ignore her requests and continued his interrogation.

18     She refused to answer his questions until he loosened the handcuffs.  Deputy SMITH ultimately told me the cuffs would only be loosened at the station.  She responded, "I actually can't wait. Please do it now."  Deputy SMITH refused and drove to the station, all the while refusing to tell her why she was being arrested.

19     When they got to the station Deputy SMITH went inside leaving her, still locked in the painful handcuffs, in the back of his SUV.  After 10-15 minutes Deputy SMITH, Deputy Peterson and a female deputy came and ordered her out of the vehicle.  Again she asked the three Deputies to loosen the handcuffs, but was again ignored. The three officers escorted her inside the station.

20     After five minutes the same female deputy returned, searched her and took her photographs, at which time the cuffs were removed as she was ushered into a holding cell.   Throughout this time deputies continued to question here, despite the fact that she had not yet been advised of her Miranda rights or the basis for the arrest.

21     At approximately 11:30 a.m., Deputy Peterson came into her holding cell and told her that three independent witnesses confirmed that the man sat, then lay down and then slid his feet under her car and faked the assault.  He informed her that the charges

of attempted manslaughter and assault with a deadly weapon were being dropped and she would not be booked into jail.

22    She assumed she would be released and that the couple would be arrested.  She was wrong.

23    She asked Deputy Peterson why she was still in custody.  He said, "In the State of California, when a peace officer asks for your name and identification, you have to provide that information to him or it's a crime."  This is not a correct statement of the law; the clearly established law is just the opposite.  She told him she didn't know that and asked him why Deputy SMITH hadn't told her, adding that she certainly would have provided her ID had Deputy SMITH merely told her so.

24    At about 11:40 a.m., Deputy SMITH came to her holding cell and advised her of her Miranda rights.  He then said she would be booked in jail unless she answered his questions.  She answered his questions and he left.  Approximately 30 minutes later she returned with a document for her to sign.  After she signed it she was taken out of the cell, given back her purse, driven back to Epic and released.

25    The very next evening, while at her boyfriend's home, without warning (and for the first time in her life) he suddenly lost consciousness, fell and split her head open on the concrete floor.  She was rushed in an ambulance to the Surgical Intensive Care Unit (bypassing the ER) where she was diagnosed with at least a concussion and intracranial hemorrhaging, in addition to a significant amount of blood loss.  The wound on her forehead required two layers of stitches to close.  Because of the severity of her injuries she had to remain at the hospital for two nights and needed an additional three weeks of constant monitoring.  Three months after the incident she continued to suffer from dizzy spells, headaches and other ongoing medical and life problems stemming from the fall.

26    Dr. FOX continues to suffer from numbness, pain and weakness in her wrists. Since the incident she still has trouble balancing and is often shaky. She had to quit her preferred yoga practice and switch to an easier method.  She noticed she stutters when

6

teaching.  She has treated with a psychiatrist for escalated anxiety and PTSD.  She also broke up with her boyfriend of almost 7 years for no reason other than anxiety.  She regularly (weekly) sees acupuncturists, chiropractors, and massage therapists and listens to subliminal hypnotherapy to sleep every night.

27     At no point in time did Dr. FOX act suspiciously, give elusive answers, obstruct or delay an officer in the performance of his official duties, disturb the peace, or refuse to cooperate in a manner which was not lawfully within her constitutional rights.  She did not strike, attempt to strike, resist, or take flight or commit any illegal acts or otherwise engage in conduct which in any way justified the actions of the Defendant Officers.

28     Dr. FOX's detention was unreasonably prolonged without any reasonable suspicion to do so.  Dr. FOX was arrested without any probable cause to believe she was subject to arrest.  No reasonable officer in the possession of the information known to  the Defendant Officers would have believed that Dr. FOX was subject to arrest or a prolonged detention.

29     Dr. FOX was subjected to excessive and unreasonable force in attempting to effectuate her detention and arrest, as there was no reason to use any force at all.

30     No reasonable officer in the possession of the information known to Defendants would have believed that they were entitled to use handcuffs on Dr. FOX's person.  No reasonable officer would have applied handcuffs on Dr. FOX's person in such a way as to cause physical pain.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**UNREASONABLE SEIZURE (DETENTION/ARREST)**
**AGAINST D.  SMITH and DOES 1-5**

31     Plaintiff refers to and incorporates by reference Paragraphs 1 through 30 as though fully set forth herein.

32     In committing the acts alleged herein, the Defendant Officers violated, without probable cause, reasonable suspicion, consent, exigent circumstances or other defense,

7

Dr. FOX's clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure in her person from unreasonable government intrusion, including false arrest/unreasonable detention.  These rights were clearly established at the time.  For these reasons, Dr. FOX is entitled to seek damages pursuant to Title 42 U.S.C. §1983, et seq.

33     A reasonably prudent officer would have known that Dr. FOX was not subject to arrest or a prolonged detention.

34     By reason of the acts alleged above, Dr. FOX did sustain great emotional distress and shock and injury to her person and nervous system, all to her damages in an amount to be proven at trial.

35     As a direct and proximate result of the acts and omissions alleged herein, Dr. FOX is entitled to general and special damages from the Defendant Officers in an amount to be proven at trial.

36     In doing the acts alleged herein the Defendant Officers acted maliciously and with reckless and callous disregard for the rights and feelings of Dr. FOX and by reason thereof Dr. FOX demands exemplary and punitive damages in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**UNREASONABLE SEIZURE (EXCESSIVE FORCE)**
**AGAINST D.  SMITH and DOES 1-5**

37     Plaintiff refers to and incorporates by reference Paragraphs 1 through 30 as though fully set forth herein.

38     In committing the acts alleged herein, the Defendant Officers violated, without any defense, Dr. FOX's clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure in her person from the use of unreasonable and excessive force, in that the force applied to arrest/detain Dr. FOX was in contravention of constitutional and statutory duty, was in excess of any force required to address the circumstances, was grossly out of proportion to any need for

force, was not employed in good faith, and was intended and substantially certain to cause serious bodily injury.   These rights were clearly established at the time.  For these reasons, Dr. FOX is entitled to recover damages pursuant to Title 42 U.S.C. §1983, et seq.

39      "[W]here there is no need for force, any force used is constitutionally unreasonable." <u>Headwaters Forest Def. v. County. of Humboldt</u>, 240 F.3d 1185, 1199 (9th Cir.2000), vacated on other grounds, 534 U.S. 801 (2001).  A reasonably prudent officer would have known that Dr. FOX was not subject to any, let alone excessive, force.

40      Handcuffing "substantially aggravates the intrusion and aggressiveness" of a detention.  See <u>U.S. v. Bautista</u>, 684 F.2d 1286, 1289 (9th Cir.1982).

41      The Ninth Circuit has held that excessively tight handcuffing can constitute a Fourth Amendment violation, where a person was demonstrably injured by the handcuffs or their complaints about the handcuffs being too tight were ignored by the officers. See e.g., <u>Wall v. County of Orange</u>, 364 F.3d 1107, 1109-12 (9th Cir. 2004); <u>LaLonde v. County of Riverside</u>, 204 F.3d 947, 952, 960 (9th Cir. 2000)(arrestee complained to officer who refused to loosen handcuffs); <u>Palmer v. Sanderson</u>, 9 F.3d 1433, 1434-36 (9th Cir. 1993)(arrestee's wrists were discolored and officer ignored his complaint); <u>Hupp v. City of Walnut Creek</u>, 389 F.Supp.2d 1229, 1232-33  (N.D. Cal. 2005).  This is what happened in this case.

42      By reason of the acts alleged above, Dr. FOX did sustain great emotional distress and shock and injury to her person and nervous system, all to Dr. FOX's damages in an amount to be proven at trial.

43      As a direct and proximate result of the acts and omissions alleged herein, Dr. FOX is entitled to general and special damages from the Defendant Officers in an amount to be proven at trial.

44      In doing the acts alleged herein the Defendant Officers acted maliciously and with reckless and callous disregard for the rights and feelings of Dr. FOX and by

reason thereof Dr. FOX demands exemplary and punitive damages in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**NEGLIGENCE, UNDER CALIFORNIA LAW**
**ALL DEFENDANTS**

45    Plaintiff refers to and incorporates by reference Paragraphs 1 through 30 as though fully set forth herein.

46    By the acts alleged above, the Defendant Officers were negligent and breached their duty of due care owed to Dr. FOX, thereby causing the injuries and severe emotional distress as described in the aforementioned Factual Allegations.  Dr. FOX is therefore entitled to general and compensatory damages in an amount to be proven at trial.

47    By reason of the acts alleged above, Dr. FOX did sustain great emotional distress and shock and injury to her person and nervous system, all to Dr. FOX's damages in an amount to be proven at trial.

48    As a direct and proximate result of the acts and omissions alleged herein, Dr. FOX is entitled to general and special damages from the Defendants in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**
**FALSE ARREST UNDER CALIFORNIA LAW**
**ALL DEFENDANTS**

49    Plaintiff refers to and incorporates by reference Paragraphs 1 through 30 as though fully set forth herein.

50    By the acts alleged herein, particularly the act of the Defendant Officers arresting and/or detaining Dr. FOX without a warrant or probable cause or reasonable suspicion, Dr. FOX was falsely arrested, entitling her to damages pursuant to California law.

51    By reason of the acts alleged above, Dr. FOX did sustain great emotional distress and shock and injury to her person and nervous system, all to Dr. FOX's damages in an amount to be proven at trial.

52     As a direct and proximate result of the acts and omissions alleged herein, Dr. FOX is entitled to general and special damages from the Defendants in an amount to be proven at trial.

53     In doing the acts alleged herein the Defendants acted maliciously and with reckless and callous disregard for the rights and feelings of Dr. FOX and by reason thereof Dr. FOX demands exemplary and punitive damages in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
**BATTERY UNDER CALIFORNIA LAW**
**ALL DEFENDANTS**

54     Plaintiff refers to and incorporates by reference Paragraphs 1 through 30 as though fully set forth herein.

55     By reason of the intentional acts of Defendants, Dr. FOX was unlawfully subjected to excessive force, assault and battery.  In committing the acts alleged herein, the Defendant Officers acted with extreme, precipitous, and unprovoked force which was substantially certain to cause, and did cause physical and emotional injury to Dr. FOX herein.

56     A reasonably prudent officer would have known that the use of any force on the person of Dr. FOX, let alone excessive force, was completely unwarranted and unlawful.

57     By reason of the acts alleged above, Dr. FOX did sustain great emotional distress and shock and injury to her person and nervous system, all to Dr. FOX's damages in an amount to be proven at trial.

58     As a direct and proximate result of the acts and omissions alleged herein, Dr. FOX is entitled to general and special damages from the Defendants in an amount to be proven at trial.

59     In doing the acts alleged herein the Defendants acted maliciously and with reckless and callous disregard for the rights and feelings of Dr. FOX and by reason thereof Dr. FOX demands exemplary and punitive damages in an amount to be proven

at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.   For general and compensatory damages against Defendants in an amount to be proven at trial;

2.   For exemplary and punitive damages against the Defendant Officers in an amount to be proven at trial;

3.   For costs of suit herein, including reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

4.   For such other and further relief as the Court deems proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims for relief.

Respectfully Submitted,

Dated: October 6, 2016

s/ Keith H. Rutman
KEITH H. RUTMAN
Attorney for Plaintiff
Email: krutman@krutmanlaw.com

12